IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHINA NATIONAL CHEMICAL CONSTRUCTION CHONGQING Co., and CHONGQING PESTICIDE CHEMINDUSTRY (GROUP) CORP., <br><br>              Plaintiffs, <br><br>     v. <br><br>KIT KUNG, <br><br>              Defendant. | CV-06-771-ST <br><br>FINDINGS AND RECOMMENDATION |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiffs China National Chemical Construction Chongqing Co. and Chongqing Pesticide Cheminindustry Corp., both organized and existing under the law of the People's Republic of China, allege the following claims against defendant Kit Kung ("Kung"), a United States citizen residing in the state of New Jersey:

1 - FINDINGS AND RECOMMENDATION

>First Claim: Fraud;
>
>Second Claim: Fraudulent Transfers;
>
>Third Claim: Use of Fraudulent Device to Defraud Creditors;
>
>Fourth Claim: Unjust Enrichment; and
>
>Fifth Claim: Restitution.

Plaintiffs previously filed a petition against Kung and two other defendants (Seedling and WorldModal Network Services) in this court (Case No. CV-05-350-ST) to confirm a foreign arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 UST 2517 ("Convention"). Kung filed a Motion to Dismiss Petition on the ground that the court lacked personal jurisdiction over him. This court granted that motion in Findings & Recommendations ("F&R") signed on January 3, 2006, and adopted by the district judge on March 2, 2006.

In this case, Kung has filed another Motion to Dismiss (docket # 6) on the following grounds: (1) this court lacks *in personam* jurisdiction over him; (2) Oregon's statute of limitations bars the fraud claims alleged to have occurred in the year 2000; (3) the fraud claim fails to state a claim upon which relief can be granted under FRCP 12(b)(6); and (4) the fraud claim fails to comply with the particularity required by FRCP 9(b). For the reasons below, Kung's Motion to Dismiss should be GRANTED for lack of personal jurisdiction.

## ALLEGATIONS

Kung's wife, Ms. Hong Yun, founded Brighton Industries Corporation ("BIC") in 1989. Complaint, ¶ 6. Kung was president, and his wife was an officer, of BIC. *Id*.

2 - FINDINGS AND RECOMMENDATION

On April 15, 1994, plaintiffs signed a chemical equipment purchase contract with BIC for the purchase price of $11 million. *Id* at ¶ 7. Under the contract, BIC would apply for a loan in the amount of $6,000,500 on behalf of plaintiffs from the Import and Export Bank of the United States ("Ex-Im Bank"). *Id*. The loan was to be guaranteed by the Chinese Construction Bank and registered with the Chinese National Foreign Currency Management Administration to be paid by plaintiffs. *Id*.

In October 1996, through a reverse merger, Kung created Brighton Technologies Corporation ("BTC"), a publicly traded company. *Id* at ¶ 8. BIC became a subsidiary of BTC. *Id*. Kung was the director, president and CEO of BTC, and owned about 59.57% of the company, or 2,715,035 shares. *Id*.

Later, plaintiffs and BIC agreed to purchase less equipment than originally planned. *Id* at ¶ 9. However, BIC still received the loan from the Ex-Im Bank based on 95% of the original contract price by submitting two sets of different documents to the United States government agencies. One set provided to the Customs reflected the actual delivery and purchase price, and the other set provided to the Ex-Im Bank reflected 95% of the original contract price, which was not based on and was higher than the actual delivery price. *Id*. As a result, BIC obtained millions of dollars more than it was legally entitled to. *Id* at ¶ 10. While BIC was not obligated to repay the extra funds, plaintiffs had to repay the loan to the Ex-Im Bank. *Id*.

BTC sold BIC to a third party in July 1999, without ever informing plaintiffs about this transaction. *Id* at ¶ 11.

On or about November 1, 1999, Kung confirmed that BIC still had $2.45 million in its bank account which was owed to plaintiffs because of the extra loan obtained from Ex-Im Bank.

*Id* at ¶ 12.  Also on or about November 1, 1999, a Refund Agreement between plaintiffs and BIC, Beijing Brighton Staq Electronic Systems Co., Ltd. ("Beijing Brighton") and BTC was signed by Kung on behalf of all the Brighton companies.  *Id* at ¶ 13.  Under the Refund Agreement, Beijing Brighton and BTC guaranteed that $2.45 would be returned to plaintiffs.  *Id*.  That same day, Kung signed a Promissory Note committing his stocks in BTC as collateral for that guarantee.  *Id* at ¶ 14.  Kung physically delivered two of his stocks certificates to plaintiffs, totaling 2,215,035 shares.  *Id*.

Immediately after signing the Refund Agreement and Promissory Note, Kung began to make BTC, the guarantor company, disappear.  *Id* at ¶ 15.  In August 2000,[1] he personally traveled to Portland, Oregon, to negotiate the merger deal between BTC and Seedling Technology Ventures, Inc. ("Seedling TVI"), an Oregon corporation.  *Id*.

In order to induce Seedling TVI to merge with BTC, Kung did not disclose that BTC was a guarantor of $2.45 million.  *Id* at ¶ 16; Plaintiffs' Response to Motion to Dismiss, Exhibit H. In a September 2, 2000 fax to Paul Peterson ("Peterson"), the president of Seedling TVI, Kung wrote: "after that the company is debt free, legal action free and very clean.  In summary, it will cost you about 200K cash to have a clean shell."  Complaint at ¶ 16; Plaintiffs' Response to Motion to Dismiss, Exhibit F.

In conducting the merger, Kung personally signed two agreements.  Complaint at ¶ 17. In a Lock-Up Agreement dated October 4, 2000, Kung agreed as an inducement for Seedling TVI to enter into the Transfer Agreement, that he "[would] not offer, sell, contract to sell, pledge or otherwise dispose of, directly or indirectly, 2,443,532 shares of the Company's common

---

[1] Kung contends the visit took place in September 2000.  Kung Declaration in Support of Motion to Dismiss, ¶ 6.

4 - FINDINGS AND RECOMMENDATION

stock." *Id*; Plaintiffs' Response to Motion to Dismiss, Exhibit F. By this time, he had already pledged a substantial amount of his BTC shares to plaintiffs on November 1, 1999, and had actually delivered 2,215,035 shares to them. Complaint, ¶ 17; Plaintiffs' Response to Motion to Dismiss, Exhibit B. In an Assignment and Assumption Agreement dated October 6, 2000, Kung agreed to hold Seedling TVI harmless for any of BTC's pre-merger debt. Complaint, ¶ 17; Plaintiffs' Response to Motion to Dismiss, Exhibit F.

On November 3, 2000,[2] the reverse merger between Seedling TVI and BTC was completed. Complaint, ¶ 19. BTC no longer existed under its name. *Id*. The newly merged company was called Seedling Technologies Corporation ("Seedling Technologies"). Peterson Affidavit, ¶ 7. Kung never transferred $2.45 million to Seedling Technologies and the money simply disappeared. Complaint, ¶ 18. Kung later resigned from his position in the new company. *Id* at ¶ 19.

On or about April 12, 2001, plaintiffs filed an arbitration petition with the China International Economic Trade Arbitration Commission ("Arbitration Commission"). *Id* at ¶ 20. Kung hired an attorney to represent him and three other Brighton corporations. *Id*. He still represented both BIC and BTC in the arbitration proceedings, even though BIC was gone in July 1999, and he was no longer an officer of BTC, facts he deliberately hid from plaintiffs. *Id*.

On March 11, 2002, the tribunal of the Arbitration Commission ordered BIC, BTC, Beijing Brighton and Kung to pay more than $3 million to plaintiffs. *Id* at ¶ 21.

To avoid collection, Kung closed Beijing Brighton. *Id* at ¶ 22. However, in the same office location, he started a new business called Beijing Branch of Brighton Equipment

---

[2] Although the Complaint alleges "November 3, 2001," the correct date is November 3, 2000.

Corporation, but Kung simply changed the office sign to Brighton Equipment Corporation ("BEC"). *Id*.

Kung has paid no sums toward principal or interest in satisfaction of plaintiffs' arbitration award. *Id* at ¶ 23.

## DISCUSSION

### I.     Personal Jurisdiction

Absent jurisdiction, this court cannot address the merits of this case. Therefore, it will first address Kung's argument that this court lacks personal jurisdiction over him.

#### A.     Legal Standard

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Rano v. Sipa Press, Inc.*, 987 F2d 580, 587 & n3 (9th Cir 1993) (citations omitted). When a court does not conduct an evidentiary hearing, but makes its jurisdictional decision based on pleadings and affidavits, the plaintiff is required merely to make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss. *Id*. That is, the plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. *Ballard v. Savage*, 65 F3d 1495, 1498 (9th Cir 1995). "Conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *Doe, I v. Unocal Corp.*, 248 F3d 915, 922 (9th Cir 2001) (*per curiam*) (citation omitted).

The power of a federal court to hear a case where the defendant claims a lack of personal jurisdiction in a diversity action depends on two independent considerations. First, applicable state law must purport to confer personal jurisdiction over the defendant. Second, the assertion of personal jurisdiction must conform with constitutional principles of due process. *See Int'l*

*Shoe Co. v. Washington*, 326 US 310, 319 (1945). Where, as in Oregon, the state and federal limits coexist (*see* ORCP 4L, *State ex rel. Hydraulic Servocontrols, Inc. v. Dale*, 294 Or 381, 384, 657 P2d 211, 212-13 & n2 (1982)), the analysis collapses into a single inquiry: whether the exercise of jurisdiction comports with federal constitutional principles of due process.

### B.    Analysis

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 US at 316 (internal quotation marks and citations omitted). Minimum contacts can be demonstrated through facts supporting either "general" or "specific" (or "limited") jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 415 n8 & n9 (1984). Plaintiffs contend this court has both general and specific personal jurisdiction over Kung because he committed tortuous acts in Oregon.

### 1.    General Jurisdiction

General jurisdiction allows a court to hear any cause of action involving a defendant, regardless of whether the cause of action arose from the defendant's activities within the forum state. *Id* at 415. General jurisdiction exists if the nonresident's contacts with the forum state, even if unrelated to the nonresident's activities in the state, are continuous and systematic, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice. *Reebok Int'l Ltd. v. McLaughlin,* 49 F3d 1387, 1391 (9th Cir), *cert denied*, 516 US 908 (1995), citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F3d 1482, 1485 (9th Cir 1993).

7 - FINDINGS AND RECOMMENDATION

Plaintiffs contend that Kung has had continuous and systematic contacts with Oregon because he sent numerous emails, faxes and letters to Oregon during the merger and purposefully availed himself to Oregon benefits and protection by filing seven suits in Oregon spanning over a couple of years to enforce a judgment which he obtained in New Jersey in the amount of about $5 million against Seedling Technologies, its chairman Douglas Spink ("Spink"), and Peterson.

Kung is a resident of New Jersey. It is undisputed that he visited Oregon only once in August 2000. It is further undisputed that he communicated with persons in Oregon by email, fax and letter as a representative of BTC for the purpose of completing the merger through November 2000. After the merger was completed, he had periodic communications with the merged company over the following few months concerning breach of the merger agreement and, through his attorneys, has attempted to collect the New Jersey judgment against the judgment debtors in Oregon, but has never traveled to Oregon for those proceedings. Plaintiffs' Response to Motion to Dismiss, Exhibit H. Kung's contacts with Oregon, although important in the context of the business relationship between BTC and Seedling TVI, were insufficiently continuous and systematic to subject Kung to general personal jurisdiction in Oregon.

Even if Kung was acting on his own behalf, his contacts with Oregon occurred over a limited period of time for one purpose only, namely to complete a merger of his company with an Oregon company and to enforce its terms. This is a quite different from a nonresident having employees, bank accounts, directors' meetings and other significant corporate activity in the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 US 437, 445 (1952); *Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F2d 462, 466 (6th Cir 1989).

Kung's contacts with Oregon do not establish general jurisdiction. Accordingly, to survive dismissal, plaintiffs must show that this court may properly exercise specific personal jurisdiction over Kung.

### 2. Specific Jurisdiction

A court has specific jurisdiction over a non-resident whose contacts with the state are not substantial if the plaintiff's cause of action arises out of the defendant's forum-related activities. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F2d 1392, 1397 (9th Cir 1986). Both in the Ninth Circuit and in Oregon, specific jurisdiction is determined by a three part test: (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum state; (2) the claim must be one arising out of or relating to the defendant's forum related activities; and (3) the exercise of jurisdiction must be reasonable. *See Panavision Int'l, LP v. Toeppen*, 141 F3d 1316, 1320 (9th Cir 1998) (citation omitted); *Ballard*, 65 F3d at 1498 (citation omitted); *State ex rel. White Lumber Sales, Inc. v. Sulmonetti*, 252 Or 121, 127, 448 P2d 571, 574 (1968) (citation omitted).

### a. Purposeful Availment

A party "purposefully avails" itself of the privilege of conducting activities in a forum state if it directs its activities at the residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 US 462, 475 (1985). Purposeful availment is shown "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard*, 65 F3d at 1498 (citations omitted). Physical presence is not required: "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State,

we have consistently rejected the notion that absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 US at 476 (citation omitted). However, contacts resulting from the "unilateral activity of another party or third person" are not attributable to a defendant. *Id* at 475 & n17. Although contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum, the contacts must be more than random, fortuitous, or attenuated. *Id* at 475. With respect to a contract entered into with a forum corporation, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are factors to be considered. *Id* at 479.

As previously noted, Kung traveled to Oregon once to negotiate the merger of BTC with Seedling TVI, and sent numerous emails, letters and faxes to Oregon during the merger negotiations and soon after the merger was completed. Those efforts were purposefully directed at Oregon.

Kung contends that he has not purposefully availed himself of conducting activities in Oregon because his activities in Oregon with respect to the merger were allegedly conducted in a representative capacity on behalf of BTC, not on his own behalf.

To rebut this argument, plaintiffs point out that Kung signed two agreements (the Lock-Up Agreement and Assignment and Assumption Agreement) in his individual capacity in connection with the merger. Plaintiffs also rely on the "piercing the corporate veil" doctrine. Under this doctrine, "if the corporation is [the shareholder's] alter ego, its contacts are his and due process is satisfied." *Rice v. Oriental Fireworks Co.*, 75 Or App 627, 632, 707 P2d 1250, 1255 (1985), *rev. denied*, 300 Or 546, 715 P2d 93 (1986). In *Davis v. Metro Productions, Inc.*,

10 - FINDINGS AND RECOMMENDATION

885 F2d 515, 522 (9th Cir 1989), under Arizona's long-arm statute, which has the same outer constitutional limits as Oregon,[3] the Ninth Circuit allowed the assertion of personal jurisdiction over officers of the defendant corporation as long as the officers had sufficient minimum contacts with the forum state. In reaching this conclusion, the court also considered that the officers involved each controlled 50% of the company. *Id*.

Kung was the director, president, and CEO of BTC, as well as the controlling shareholder with over 59% of BTC's shares. Therefore, Kung's contacts with Oregon on behalf of BTC may be attributed to him in his individual capacity. Because he purposefully directed his activities at residents of Oregon and BTC is his alter ego, Kung has purposefully availed himself of the privilege of conducting activities in Oregon as an individual.

### b.     Arising out of or Related to Activities in Oregon

In the Ninth Circuit, a claim is "related to" or "arises out" of a defendant's forum-related activities if the plaintiff would not have a cause of action "but for" the defendant's contacts with the forum. *Doe v. Am. Nat'l Red Cross*, 112 F3d 1048, 1051-52 & n7 (9th Cir 1997), citing *Shute v. Carnival Cruise Lines*, 897 F2d 377, 381 (9th Cir 1990), *rev'd on other grounds*, 499 US 585 (1991); *Zeigler v. Indian River Co.*, 64 F3d 470, 474 (9th Cir 1995) (citations omitted). The Oregon Supreme Court has held that a cause of action "arises out of" or "is related to" activities in Oregon if the contact with the forum state is "substantively relevant to the cause of action." *State ex rel Michelin v. Wells*, 294 Or 296, 302-03, 657 P2d 207, 210-11 (1982) (*en banc*). It explicitly rejected the Ninth Circuit's approach in on the basis that the Supreme Court of the

---

[3] "Arizona's long-arm statute has been interpreted by Arizona courts as permitting jurisdiction as broad as is authorized by the United States Constitution." *Davis*, 885 F2d at 520 (citations omitted).

United States does not and would not apply the "but for" test. *State ex rel Circus Circus Reno, Inc. v. Pope*, 317 Or 151, 161, 854 P2d 461, 466 (1993) (*en banc*). Clearly, the Oregon Supreme Court's interpretation of "arising under" or "related to" is narrower than the Ninth Circuit "but for" test. However, under the facts in this case, the result is the same regardless of which test is employed since plaintiffs' claims fail to arise out of their contact with Oregon.

Plaintiffs' burden is to demonstrate facts which, if true, would support personal jurisdiction. They allege that Kung's contacts with Oregon are substantially relevant to their claims because the merger was one of the most important steps, if not the final step, of his scheme to avoid paying the $2.45 million owed to them. Through BIC, Kung first obtained $2.45 million more than needed in loans which neither he nor BIC would have to repay. Kung sold BIC in July 1999. When pushed to sign the Refund Agreement and Promissory Note on November 1, 1999, he made BTC the guarantor and also pledged his own stock in BTC. Shortly thereafter in August 2000, he traveled to Oregon to personally negotiate the merger between BTC and Seedling TVI, culminating in the reverse merger on November 3, 2000, when BTC ceased to exist. Plaintiffs contend that Kung's purpose in coming to Oregon was to dispose of BTC, the guarantor of the $2.45 million debt. Kung planned for the newly merged Seedling Technologies to go out of business by transferring to it a liability of BTC, but not the assets to pay the liability.[4] To realize this plan, BTC surrendered 85% of its shares to the new company, Seedling Technologies, in exchange for Seedling TVI's assets. Plaintiffs do not know what

---

[4] It appears that prior to the merger, BTC publicly disclosed the excess loan proceeds. The 10K Annual Report for Brighton Technologies for the period ended December 31, 1998, discussed the China National Project and said: "In addition, a deposit payable to the China National of $2,150,000 was outstanding at December 31, 1997 and 1998, which is classified as customer deposits in the consolidated balance sheet." *See* Case No. 05-350 Docket # 13, Petitioners' Motion to Compel, Ex. 2, pp. 63-64.

happened to the $2.45 million, only that BTC did not transfer the $2.45 million in assets to Seedling Technologies. Kung then continued business in China through BEC in the same location doing the same business.

In its previous F&R, this court found that it had no personal jurisdiction over Kung in a suit to confirm a foreign arbitration award because that cause of action did not arise out of Kung's contacts with Oregon. Instead, plaintiffs' cause of action to confirm the arbitration award existed regardless of Kung's contacts with Oregon. This court further noted that if anything, Kung's contacts with Oregon may be relevant *after* the confirmation of the arbitration award when plaintiffs attempt to recover the damages awarded by arbitration.

In the present case, plaintiffs' counsel acknowledged at oral argument on September 20, 2006, that plaintiffs' claims are based on BTC *not* transferring the $2.45 million to Seedling in the merger. Under this theory, Kung either took the money personally from BTC or played a role in fraudulently transferring the money elsewhere before the merger. In either scenario, the alleged fraud against the plaintiffs was concluded *before* the merger with Seedling TVI. Hence, it did not arise out of Kung's contacts with Oregon. Any fraud claim against Kung arising from the merger can only be brought by Seedling Technologies for being transferred the liability of the debt without the assets needed to cover the debt.

Plaintiffs have two options. The first is to sue Kung for fraud in New Jersey, where he is a resident and potentially obtained or was responsible for transferring the $2.45 million from BTC. The other option is to attempt to collect the arbitration award on the judgment of default entered by the District Court of Oregon in the prior case against the successor of Seedling Technologies, WorldModal Network Services ("WorldModal"). As the successor entity for

13 - FINDINGS AND RECOMMENDATION

Seedling Technologies, WorldModal could potentially sue Kung for indemnification under the Assignment and Assumption Agreement which he personally signed.

### c. Reasonableness

Finally, Kung argues that it would be unreasonable to exercise jurisdiction over him in Oregon as he is a New Jersey resident with no ties to Oregon other than the one meeting in Oregon relating to the merger.

In determining the third requirement of reasonableness, the court must weigh the following factors: (1) extent of defendants' purposeful injection into the forum; (2) defendants' burden from litigating in the forum; (3) extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Theo H. Davies & Co. v. Republic of the Marshall Islands*, 174 F3d 969, 975 n4 (9th Cir 1999) (citation omitted); *Terracom v. Valley Nat'l Bank*, 49 F3d 555, 561 (9th Cir 1995) (citations omitted). No single factor is dispositive. *Id*.

Plaintiffs contend that it would not be burdensome for Kung to defend himself in Oregon as he has filed several suits here. As explained in the previous F&R, this, by itself, is not sufficient to hail a defendant into Oregon courts, as the suits were to collect a judgment obtained in New Jersey and did not require his personal participation. Moreover, Oregon has no clear interest in resolving matters of alleged fraud or fraudulent transfer perpetrated outside its

14 - FINDINGS AND RECOMMENDATION

borders.[5]  While Kung signed an agreement in his individual capacity governed by Oregon law to hold Seedling TVI "harmless" in any suit for debts incurred by BTC before the merger, Seedling TVI is not a party to this case, and Kung has not sued as a third-party defendant under the agreement to hold Seedling TVI harmless.  Therefore, plaintiffs have not met their burden that exercise of personal jurisdiction over Kung in Oregon is reasonable.

### 3.     Conclusion

This court has neither general nor specific jurisdiction over plaintiffs' claims.  Kung raised two other grounds allegedly supporting dismissal.  Without jurisdiction, this court cannot make findings on these other grounds.  However, the court will address them briefly in the alternative that this court's recommendation on the jurisdictional issue is not adopted.

## II.    Particularity Requirements of FRCP 9(b)

Kung contends that this case should be dismissed because plaintiffs failed to comply with the particularity requirements of FRCP 9(b) by making general and conclusory statements.

FRCP 9(b) dictates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  On the other hand, "Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter." *Walling v. Beverly Enter.*, 476 F2d 393, 397 (9th Cir 1973).  "Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  FRCP 9(b).  The purpose of FRCP 9(b) is to require "identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Walling*, 476 F2d at 397.

---

[5] Any fraud allegedly committed by Kung and/or BTC against the Oregon company Seedling TVI through the merger would be the subject of a claim by Seedling Technologies, not by plaintiffs.

15 - FINDINGS AND RECOMMENDATION

Under FRCP 84, "[t]he forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules indicate." Official Form 13 contains an example of a well-pled complaint on a claim for debt and to set aside fraudulent conveyance. "Official Form 13 demonstrates that even fraud may be pleaded without long or highly detailed particularity." *Guidry v. US Tobacco Co., Inc.*, 188 F3d 619, 632 (5th Cir 1999), citing 12A Wright & Miller, App. D. The particularity requirement "may be relaxed as to matters peculiarly within the opposing party's knowledge," such as "in cases of corporate fraud, [where] the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Wool v. Tandem Comp.*, 818 F2d 1433, 1439 (9th Cir 1987), *superseded by statute on unrelated grounds as explained in Hockey v. Medhekar*, 30 F Supp 2d 1209, 1215 (ND Cal 1998) (internal citations omitted). Instead, the particularity requirement in such cases "may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded." *Id*.

Plaintiffs' allegations have stated the time, place and nature of the alleged fraudulent activities, as well as the perpetrator of these activities. *See* Complaint, ¶¶ 1-24. In addition, the allegations in the complaint closely mirror those in Official Form 13. More detailed facts are not needed in this corporate fraud case, where the allegations are accompanied by a statement of facts upon which plaintiffs' belief is founded. In sum, the Complaint presents the opposing party with sufficiently particular allegations to form their response, and satisfies the requirements of FRCP 9(b).

///

///

16 - FINDINGS AND RECOMMENDATION

**III.     FRCP 12(b )(6) and the Statute of Limitations**

Kung contends that the Complaint should be dismissed under FRCP 12(b)(6) as failing to state a claim because it is time barred by the applicable statute of limitations.

On a motion to dismiss under FRCP 12(b)(6), the sufficiency of the complaint must be evaluated. The complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove a set of facts which would entitle the plaintiff to relief. *Travis v. Knappenberger*, 204 FRD 652, 654 (D Or 2001) (citation omitted).

Under ORS 12.110(1), "[a]n action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising in contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." The statute of limitations is tolled until fraud could have been discovered by use of reasonable diligence. *Equitable Life & Cas. Ins. Co. v. Lee*, 310 F2d 262, 270 (1962) (citation omitted).

Plaintiffs allege they were defrauded on November 3, 2000, the date of the merger between BTC and Seedling TVI. As such, Kung contends that the latest possible date for plaintiffs to bring suit under Oregon's applicable statute of limitations was November 3, 2002. Kung believes that plaintiffs were charged with knowledge of the underlying allegations of fraud on or about April 12, 2001, when they filed their arbitration claim in China. Kung also points out that plaintiffs should be charged with knowledge of BTC's merger with Seedling TVI from public documents dated November 8, 2000, and filed March 1, 2001 with the Securities and Exchange Commission. Kung also submits the Affidavit of Hong Zhang ("Zhang"), plaintiffs'

17 - FINDINGS AND RECOMMENDATION

attorney in the arbitration proceedings, who declares that Kung never informed plaintiffs that BTC had merged with a third company in November 2000, and plaintiffs only found out about the merger "later" when they were doing research on the internet to get information on BTC. Zhang Affidavit, ¶ 10.

Plaintiffs respond that they first learned that Kung had not transferred $2.45 million to the newly formed Seedling Technologies on November 5, 2005, as a result of Kung's production of documents in connection with the previous case. Baolin Chen Affidavit, ¶ 8.

The court sees no inconsistency between the facts presented by the parties. The statute of limitations clock did not start when plaintiffs learned or should have learned of the merger, but when they learned or should have learned that the $2.45 million was not transferred by BTC to Seedling Technologies in the merger. Knowledge that the BTC did not transfer the $2.45 million to Seedling Technologies is a key component of plaintiffs' fraud allegations against Kung. Kung does not argue that plaintiffs should have known about this fact before the date of their alleged actual knowledge, November 5, 2005. Plaintiffs then proceeded to file this action on May 31, 2006, well within two years after that date.

## RECOMMENDATION

For the reasons set forth above, respondent Kit Kung's Motion to Dismiss (docket # 6) should be GRANTED on the basis of a lack of personal jurisdiction.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due by November 20, 2006. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 27th day of October, 2006.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

19 - FINDINGS AND RECOMMENDATION